**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LEMARKUS ANTWAN SNOW,** | **:** | |
| **Plaintiff,** | **:** | |
| **vs.** | **:** | **CIVIL ACTION 03-0549-CB-L** |
| **SHERIFF JACK TILLMAN, et al.,** | **:** | |
| **Defendants.** | **:** | |

**REPORT AND RECOMMENDATION**

Plaintiff, a federal prison inmate proceeding pro se and in forma pauperis filed a complaint under 42 U.S.C. § 1983 against defendants. (Docs. 1, 5).[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the

[1] Plaintiff initially named as defendants Jack Tillman, Sheriff of Mobile County, Alabama; Mike Haley, Warden at the Mobile County Metro Jail along with the Mobile County Metro Jail. (Doc. 1) The undersigned Magistrate Judge subsequently entered a Report and Recommendation that the complaint be dismissed on the grounds that it was frivolous or failed to state a claim against those defendants. (Doc. 2) Thereafter, plaintiff filed an objection to the report which the court construed as a motion to amend the complaint, which the court granted. (Docs. 3, 4) Plaintiff subsequently filed an amended complaint on October 6, 2003 naming as defendants the following: Corporal Blanks, Corporal Edwards, Correctional Officer Edwards, Correctional Officer Etheridge, Correctional Officer Hicks, Correctional Officer Liptak, Correctional Officer Simmon, Correctional Officer Yancy, Correctional Officer Critz and Correctional Officer Prowell. (Doc. 5) Plaintiff has not effected service on two remaining officers named as defendants in the amended complaint. (Id.) On December 22, 2003 the District Judge entered an order noting that plaintiff's amended complaint failed to name Sheriff Tillman, Officer Haley or the Mobile County Metro Jail as parties and therefore those defendants were *sua sponte* dismissed from this litigation. (Doc. 11)

undersigned on plaintiff's motion for summary judgment and evidentiary submissions (Doc. 71); defendants' answers and special reports (Docs. 21, 22, 23, 45, 46, 47) [2] plaintiff's motion to admit material to summary judgment (Doc. 73) and plaintiff's motion to add information and documents to already filed motion for summary judgment (Doc. 74). [3] For the reasons stated herein, it is the recommendation of the undersigned Magistrate Judge that plaintiff's motion for summary judgment be **DENIED**.

## I. SUMMARY OF ALLEGATIONS

From its review of the record, the court summarizes the allegations which are material to the issues addressed in this Report and Recommendation as follows:

Plaintiff's claims stem from his incarceration at the Mobile County Metro Jail ("Metro Jail") where he was held prior to being transferred to federal custody in the summer of 2003. On June 1, 2003 while plaintiff was incarcerated at the Metro Jail he was involved in an altercation with the defendants when he refused to return to his cell when ordered to do so by correctional officers. A lock down of the wedge in which plaintiff was housed was ordered and plaintiff was forcibly removed from the area by several Correctional Officers. Plaintiff alleges that the officers used excessive force in

[2] The court construes defendants' Special Report and Answer as a response to plaintiff's motion for summary judgment.

[3] Plaintiff maintains that he has recently received defendants' responses to interrogatories and requests for admissions and seeks to have those materials admitted in support of his motion for summary judgment. (Doc. 73) Upon consideration, plaintiff's motion to admit materials to summary judgment is **GRANTED.** Plaintiff also moves the court to add information and documents to already filed motion for summary judgment. (Doc. 74) Specifically, plaintiff seeks to admit a statement by a Metro Jail inmate given during an Internal Affairs investigation regarding the inmate's allegations that he was subjected to excessive force by Corporal Blanks, one of the named defendants in this action. Upon consideration, plaintiff's motion to submit this additional information is **GRANTED.**

removing him from the area and as a result he suffered bodily injuries.

Plaintiff filed the instant §1983 action against the ten (10) named correctional officers [4] alleging, in sum, that during the June 1, 2003 incident the officers rendered plaintiff unconscious with a blow to the head, causing him to fall to ground where he was kicked, punched, and hit with handcuffs, and then after blacking out three to four times, he was pulled up by his handcuffs and kicked under the eye by an officer's boot. (Doc. 5) Plaintiff contends that after he was removed from the wedge area he was taken to the "hole" (segregation unit) where he was thrown, face down while still handcuffed, onto an iron bed at 3:50 p.m. and did not receive a mat or toilet paper until 10:00 p.m. that night. (Doc. 5) Specifically, plaintiff alleges that he "took over a hundred blows to [his] back, head, neck, shoulders, ribs, side, arms, legs, and was kicked under [his] eye and below [his] mouth. [He] suffered cuts, bruises, and swelling on [his] face, neck, shoulders, ribs, side, and [his] head had swollen spots all over it." (Id.) Plaintiff states that officers from the Internal Affairs Division of the Mobile County Sheriff's Department took statements from both plaintiff and his cell mate, took pictures of their injuries, and documented the incident.

Plaintiff further claims that he was denied medical treatment after the incident. (Doc. 5) Plaintiff asserts the nurses and staff at the jail only listened to his heart and took his pulse, did not give him pain medicine until June 4, 2003, and never took him to a hospital even though he had difficulty breathing, would lose vision in his left eye, suffered migraine headaches, and had infection in his wounds. (Id.)

---

[4] Plaintiff initially provided incorrect names and/or spellings of names of several of the defendants. At this time two defendants, recently identified by plaintiff as Correctional Officer Love and Correctional Officer Selleis, have yet to be served. The undersigned has directed the defendants to provide the address of those officers (if known) to the court no later than July 20, 2005. (See Doc. 76)

Plaintiff contends that for nine (9) days he requested proper medicine and medical treatment but was denied such treatment until he was transferred into the custody of the federal government on June 10, 2003. (Id.) Plaintiff asserts that as a result of his injuries, he is in continuous pain, suffers memory loss and nightmares, and takes large dosages of pain medicine.

Furthermore, plaintiff alleges that the officers who assaulted him also continued to serve his meals after the June 1, 2003 incident and threatened to poison his food which caused him to refuse his meals from June 1 to June 4 until the Internal Affairs officers segregated these other officers. (Doc. 5) [5] For relief, plaintiff requests $20 million, an apology from the warden and sheriff, the termination of the nine correctional officers, improvement in the poor jail conditions, treatment of inmates as humans, placement of a social worker at the jail to listen to inmates' complaints, and medical treatment that is available 24 hours a day, 7 days a week at the jail. (Id.)

In their Special Report and Answer to plaintiff's amended complaint, defendants maintain, in sum, that "[plaintiff's] constitutional rights were not violated and that only a reasonably [sic] amount of force was used in order to secure and control a potential security problem within the jail." (Doc. 22 at 3) Defendants argue that they had reason to be wary in their interactions with plaintiff given his history of disruptive conduct at the Metro Jail and point to two prior incidents where plaintiff was disciplined for refusing to comply with officers' directives and for encouraging other inmates to do the same. (Doc. 22 at 1-2) First, defendants note that on May 18, 2003 plaintiff was accused of "refusing to obey

[5] The evidentiary submissions reflect that plaintiff did refuse meals on June 2, 2003 and June 3, 2003. (Doc. 23, Exhibit 9) However, both CO Liptak and CO Etheredge deny placing any foreign substance in plaintiff's food. (Doc. 23, Exhibits 1, 6)

orders given by staff member, encouraging others not to keep cells and day room areas cleaned and engaging in conduct which disrupts or interferes with the security or orderly running of the facility". (Id.) [6] Less than two weeks later, on May 30, 2003 defendant was "found guilty of threatening another with bodily harm; engaging in threatening action toward a staff member; refusing to obey orders given by a staff member; insolence toward a staff member (disrespect); using abusive of obscene language and engaging in conduct which disrupts or interferes with the security of the facility." (Doc. 22 at 1-2 ) [7]

In support of the Answer and Special Report defendants have provided the court with copies of Metro Jail records, medical records, photographs of plaintiff taken after the incident, and affidavits of correctional officers which support defendants' account of the June 1, 2003 altercation involving plaintiff. (Doc. 23, Exhibits 1-10) Defendants maintain that on June 1, 2003 plaintiff became verbally aggressive with officers preparing to serve the evening meal. (Doc. 23, Exhibits 1-7; 9) A lock down was called for and plaintiff was directed to return to his cell. (Id.) Plaintiff refused to comply at which point the officers proceeded to subdue plaintiff and physically removed him from the wedge area. (Id.) The defendants concede that some degree of force was necessary to subdue plaintiff since plaintiff was

---

[6] On May 18, 2003 an incident report was written on plaintiff for "riot or encouraging others to riot; refusing to obey orders given by a staff member; encouraging others not to keep cells and day room areas clean and sanitary; conduct which disrupts or interferes with the security or orderly running of the facility."(Doc. 23, Exhibit 9) After a disciplinary hearing, plaintiff was found not guilty of the charge of rioting or encouraging others to riot and admitted to the other three offenses. Plaintiff lost visitation rights from 5/22/03 until 6/5/03.

[7] On May 30, 2003 plaintiff was again written up for "assault or threatening another with bodily harm; threatening action toward a staff member; refusing to obey orders given by a staff member; insolence toward a staff member (disrespect); using abusive or obscene language; conduct with disrupts or interferes with the security of the facility." (Id.) Plaintiff was determined guilty of all charges and was placed in administrative segregation until 6/5/03. (Id.)

actively resisting restraint but maintain that the force used was reasonable "in order to secure and control a potential security problem within the jail." (Doc. 22 at 3) During the time plaintiff was being subdued he received several cuts and lacerations to his face and body which were documented. (Doc. 23, Exhibit 10) Plaintiff has not contested the accuracy or validity of the defendants' records. Plaintiff states that he refused to follow the officers' orders because he felt he had done nothing wrong and wanted to speak with one of the correctional officers' superiors before returning to his cell. (Doc. 23, Exhibit 9 )

Resolving all inferences in favor of the non-moving party (defendant) as is required at this juncture, the undersigned finds that plaintiff has failed to show an absence of a genuine issue of material fact. Therefore, it is the recommendation of the undersigned that plaintiff's motion for summary judgment be **DENIED.**

II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). Moreover, what are considered to be the "'facts' at the summary judgment stage may not turn out to be

the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and, in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tipton, 965 F.2d at 998-99. In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis omitted). "'[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton, 965 F.2d at 999 (quoting Anderson, 477 U.S. at 255). However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

Moreover, the non-movant bears "the burden of coming forward with sufficient evidence on *each element* that must be proved." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original). If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

In this action, plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged use of excessive force by defendants on June 1, 2003 while plaintiff was incarcerated at Metro Jail, awaiting transport to a federal facility. (Doc. 5) In addition, plaintiff maintains that he was denied medical treatment for injuries he maintains he suffered as a result of the incident. (Id.)

### Excessive Force

Plaintiff first alleges that defendants violated his Eighth Amendment rights by using excessive force to subdue him and remove him from his wedge area on June 1, 2003. (Doc. 5) In support of his motion for summary judgment plaintiff has submitted various records, including copies of interviews with the defendants conducted by the Internal Affairs Division of the Mobile County Sheriff's Department , copies of grievances filed by plaintiff as a result of the June 1, 2003 incident, copies of plaintiff's requests for medical attention and pictures taken of plaintiff following the incident. (Doc. 71, Exhibits 1-12, 16) Plaintiff maintains that defendants' actions were unwarranted and that he was punched,

kicked and hit over one hundred (100) times causing injuries to his neck, face, back, shoulders, knees and head.

Defendants deny plaintiff's allegations of excessive force and assert that on June 1, 2003 Correctional Officer Etheredge, accompanied an officer "trainee" to wedge 1205 where plaintiff was detained at which point plaintiff "began yelling and making a 'ruckus.'" (Doc. 22 at 2) Defendants maintain that when the officer inquired about the problem plaintiff began yelling, removed his shirt and "made threats to the officers." (Id.) At that point defendant Etheredge claims that he left the area and called the security officer, CO Banks who returned to the wedge and questioned plaintiff. The wedge was ordered "locked down" however, plaintiff and his roommate refused to return to their cell and "became verbally abusive and aggressive toward Corporal Banks." (Id.) At that point defendants maintain that additional officers were called in and while the officers were removing plaintiff's cell mate from the area, plaintiff "rushed Corrections Officer Simon knocking him to the ground" at which point "Officer Simon, along with Corporal Blanks, C/O Liptak and C/O Keith Edwards subdued [plaintiff] using only that force which was necessary in order to gain control of the situation." (Doc. 22 at 2) Plaintiff was then escorted to the segregation unit and later that day pictures were taken of plaintiff. On June 10, 2003 plaintiff was "sent to Dallas County Jail in Selma, Alabama and subsequently transferred to a federal corrections facility." (Doc. 22 at 2-3)

In addressing an excessive force claim brought under § 1983, the court begins its analysis "by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). Based on a review of the records, it appears that, at the time of the altercation, plaintiff was being held at Metro Jail, awaiting transport to a federal

institution pursuant to a previous conviction and sentence. Thus, the Eighth Amendment, which attaches "after conviction and sentence," applies to this case and protects plaintiff from punishment that is cruel and unusual. Graham, 490 U.S. at 392 n.6; see also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component. First, plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and second, plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously or sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-8 (1992); Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)("the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm"). In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. Hudson, 503 U.S. at 7 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Plaintiff states that on June 1, 2003 "was in the dayroom questioning c/o Love about booming

the T.V. on the wedge on May 31, 2003 (the day before).[8] Plaintiff maintains that officer Etheridge entered the wedge and he and plaintiff exchanged words. Plaintiff concedes that he and his cellmate refused to pack up and move as ordered by the correctional officers because they felt they had done nothing wrong and wanted to speak to supervisory personnel. (Doc. 23, Exhibit 9) Defendants have submitted affidavits of each of the officers involved in the June 1, 2003 incident along with documentary submissions supporting defendants' position that defendants were concerned that plaintiff posed a threat to the safety of the officers and the security of the Metro Jail. (Doc. 23, Exhibits 1-7, 9) [9]

The evidence in this action, interpreted in the light most favorable to the non-moving party, as is required at the summary judgment stage, presents a sufficient disagreement to require submission to a fact finder, and is certainly not so one-sided that plaintiff must prevail as a matter of law. It is undisputed that plaintiff resisted the officers attempt to remove him from his wedge area and it is further undisputed that while attempting to do so, several of the officers struck plaintiff on various areas of his body in an attempt to subdue and restrain him. (Doc. 23, Exhibit 9) In the final analysis, the undersigned concludes that plaintiff has failed to show the absence of a genuine issue of material fact as to whether the defendants' conduct violated his constitutional rights. There is a genuine issue of material fact as to whether the force used by the defendants "was applied in a good-faith effort to

---

[8] This information is taken from plaintiff's interview with Internal Affairs after the June 1, 2003 incident. (Doc. 23, Exhibit 9) Plaintiff explained that "booming" the television means cutting it off from the pod. (Id.)

[9] In addition to the officers' affidavits defendants have also submitted copies of narratives completed by each of the officers after the June 1, 2003 incident. (Doc. 23, Exhibit 9) The officers' accounts of the incident are consistent in that they maintain plaintiff was observed refusing to obey officers' directives to return to his cell and that he resisted efforts by the officers to physically remove him from the area. (Doc. 23, Exhibits 1-7)

maintain or restore discipline..." See Hudson 503 U.S. at 6-7. Consequently, the undersigned concludes that plaintiff's motion for summary judgment is due to be denied.

Denial of Medical Treatment

Plaintiff further argues that he was denied medical treatment for injuries he contends he sustained during the June 1, 2003 incident. Specifically, plaintiff argues that despite the "logged in reports that the plaintiff suffered cuts, swelling, and bruises to his eye, leg, shoulder, rib, back, head, neck, and ear...treatment by a hospital was refused when requested by plaintiff who suffered tremendous injury's [sic] and pain." (Doc. 71 at 1) In response to plaintiff's allegations, defendants have submitted the medical requests forms generated by plaintiff along with the reports of the medical personnel who evaluated plaintiff at the Metro Jail following the June 1, 2003 incident. (Doc. 23, Exhibit 9)

In order to establish a claim under §1983/Eighth Amendment based on a denial of medical care, the plaintiff must establish that such denial involved a "serious" medical need. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir.1994) (finding delay or denial of "superficial, nonserious physical conditions" does not rise to the level of a constitutional deprivation). Further, plaintiff must establish that the defendants' denial or delay of treatment was done with deliberate indifference to the inmate's serious medical needs. Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir.1990).

The evidence before the court reflects that the incident occurred at approximately 3:45 p.m. on Sunday, June 1, 2003. (Doc. 23, Exhibit 9) Notwithstanding plaintiff's allegations to the contrary, defendant has submitted documentation reflecting that the plaintiff was examined by a nurse at the

Metro Jail on Sunday, June 1, 2003, Monday June 2, 2003, Tuesday June 3, 2003 and Wednesday June 4, 2003. (Doc. 56, Exhibit 1) [10] Further the documents reflect that plaintiff was examined by a physician from Franklin Primary Health Center on Wednesday, June 4, 2003. (Id.) The medical reports indicate that plaintiff did sustain bruising of his face, neck, shoulder, the back of his head and swelling behind his ear as a result of the incident. (Id.) In addition, the records reflect that plaintiff sustained abrasions to his back and knee which were noted as "healed" by the nurse on June 5, 2003. (Id.) Plaintiff was treated with ibuprofen, acetaminophen and ice packs. (Id.) While plaintiff alleges that he suffers headaches and vision loss this is not supported by any documentary submissions. Rather, the medical records reflect no broken bones and plaintiff's vital signs, speech and gait were all normal following the incident. (Id.)

Based on a careful review of the pleadings and the evidentiary submissions of the parties, the undersigned finds that there is a genuine issue of material fact whether the injuries plaintiff sustained on June 1, 2003 involve a "serious medical need" and/or that the defendants' treatment of plaintiff was conducted with a "deliberate indifference" to plaintiff's "serious medical needs". Accordingly, plaintiff has failed to establish the absence of a genuine issue of material fact such that summary judgment would be proper.

## IV. CONCLUSION

Based on the foregoing, it is the recommendation of the undersigned that plaintiff's motion for summary judgment be **DENIED.**

---

[10] Defendants have identified the plaintiff's medical records, collectively, as "Exhibit 1" and the daily assignment sheets from the Metro Jail for June 1, 2003 collectively, as "Exhibit 2".

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this 19th day of July 2005.

/s/ Kristi D. Lee
**KRISTI D. LEE**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**KRISTI D. LEE**
**UNITED STATES MAGISTRATE JUDGE**